## Austin *v.* Bradley.

### In the Court below,

JAMES AUSTIN, and MEHITABEL AUSTIN, *Petitioners :*
WILLIAM BRADLEY, *Respondent.*

1807.

A promise in writing, by the mortgagor, to the mortgagee, to make an absolute conveyance of the mortgaged premises to him, on demand, at an appraisement, and, if appraised at more than the mortgage debt, to pay the balance within one year, will be considered in chancery, as a transfer of the equity of redemption, from the tender of such balance and demand of such conveyance, the same being made within the year.

The mortgagor, in such case, being dead, before any tender or demand made, the same may afterwards be made, within the year, to his executors.

A residuary legatee cannot be a witness to encrease the fund on which the *residuum* depends ; and a release by the witness of a particular thing appertaining to the fund, which may be the subject of the suit in which he is called to testify, does not discharge his interest.

THIS was a petition in chancery to redeem mortgaged premises.

The petitioners, two of the children and legatees of *Seth Austin*, deceased, (there being several other legatees not joined,) in their petition, stated, that their father, *Seth Austin* deceased, in his life-time, conveyed to the respondent certain lands in Suffield, upon condition contained in the deed, that said *Seth Austin* should indemnify the respondent from the payment of $340, for which sum the respondent had before that time become surety for said *Seth Austin* : That said *Seth Austin* had failed to pay, and that the respondent had been compelled to pay said sum for him : That there was then due the respondent, on that account, about $231 50 : And that on the 28th of July, 1806, they offered and tendered to the respondent $245 14 in full of said debt ; which he refused to accept.

The respondent, in his answer, stated, that, after paying said debt for said *Seth Austin*, he had agreed to except therefore an absolute title to the premises, and that, for that purpose, said *Seth Austin*, while in full life, to wit, on the 21st of March, 1806, made and delivered to him a writing, [recited in the answer] whereby he promised, that he would, on demand, convey to the respondent, by a good and sufficient

deed of warranty, the land aforesaid, at such price as the same should be estimated to be worth, by *Samuel Hale*, *Oliver Hanchett*, and *Elihu Kent*, jun. : And if said lands should by them be appraised at more than the sum due the respondent, the balance should be paid to the said *Seth Austin* in one year from the date of the writing : That the appraisers did, on the 22d of March 1806, appraise said land at the sum of $369 : That said *Seth Austin* died in April, 1806 : And that, within one year from the date of said writing, to wit, on the 4th of August, 1806, the respondent offered and tendered to the executors of the last will and testament of said *Seth Austin*, deceased, the sum of $137 50, being the difference between the price at which said land was estimated by the appraisers, and the debt due to the respondent ; and demanded of them to procure for the respondent a sufficient conveyance of said land.

This answer was traversed by the petitioners.

On the trial of the case before the Superior Court, the petitioners offered as a witness, *Mary Ewing*, a daughter of said *Seth Austin*, deceased ; to whose competency the respondent objected the will of said *Seth Austin*, in which, after bequeathing one third of all his estate to his wife, and to five children, and two grand-children, of whom said *Mary Ewing* was not one, the sum of $2,700, he proceeded thus : " Fur- " ther, my desire and meaning is, that after each of my " children shall have received the said sums out of my es- " tate, the residue and remainder thereof shall be equally " divided among them *all.*"

To avoid this objection, the petitioners read in evidence a deed, purporting to be a quit-claim of the land in question, by said *Mary Ewing* to the petitioners.

The Superior Court decided, that the witness was not admissible ; whereupon the petitioners filed their bill of exceptions.

The Superior Court found the answer of the respondent to be true ; and thereupon dismissed the petition with costs.

*Ingersoll*, for the plaintiff in error.

The respondent relies on the *agreement* as the sole reason why he should not suffer a redemption. We contend, that this agreement cannot be enforced against the *heirs* of *Seth Austin ;* the reason is, it is an agreement entirely *personal*, and has no binding force on the *representatives* of the person contracting. Some contracts are entirely personal, and have no force on executors, &c. Suppose A. engages to deliver his neighbour a horse within 30 days, and dies before the time ; this contract cannot be enforced against his representatives. So, if a man takes an apprentice, covenants under a penalty to teach him a trade, &c. and dies ; his executors are not bound. (*a*) The covenant here runs, " I will make a conveyance *on demand*, " after an appraisement, and after you have given *your* " *notes*," &c. This covenant is *personal*. Mr. *Bradley* goes to the executors ; they can do nothing about it ; the heirs alone can do it. The difficulty of getting a conveyance shows, that the covenant was personal. Mr. *Bradley* could not get this contract enforced in equity. If the heirs cannot redeem, neither can they enforce the agreement, and will be in a hopeless situation. The respondent ought to have filed a cross-bill, praying for a conveyance, on fulfilling his part of the contract.

Another reason is, that no conveyance was to be made, unless upon the *demand* of the respondent made to the covenantor. Whenever a man is to do a collateral thing, *on demand*, a special demand must be made. An agreement to pay money on demand is different. To prove this distinction, *Bach* v. *Owen* (*b*) may be cited. A *demand* could not

(*a*) 1 *Bac. Abr.* 533. *fol. edit. Cro. Eliz.* 457, 553. *Hyde* v. *Dean and Chapter of Windsor.*

(*b*) 3 *Term. Rep.* 409.

have been made immediately, for an appraisement must
have taken place first. This shews it to be a different case
from a note on demand ; for in that case, the demand is
considered as made immediately.

Again, the agreement cannot be enforced, because it is
not reciprocal. There is nothing by which *Bradley* can
be compelled to do his part.

With respect to the witness, whatever her interest might
have been under the will, she had released it. But it does
not appear, that she had any interest before the release ; for
it does not appear that there would be any residuum after
paying the previous legacies.

*Bradley* for the defendant in error.

One question in this case is, whether payment by the re-
spondent of the balance of $137 50, which arose upon the
appraisement of the land, was a condition precedent to
the obligation of *Austin* to convey the land to him ?

By the terms of this written agreement of *Austin*, it is
provided, that if the land shall be appraised at more than the
debt, payment shall be made in one year ; but *Austin* con-
tracts to convey on demand, and demand may be made
immediately. It is, therefore, clear, that the parties did
not intend to make, and have not made, a condition prece-
dent to the obligation of *Seth Austin* to convey the land.

Upon the making of this agreement, *Seth Austin* was un-
der obligation to convey to the respondent. And if he were
under obligation to convey his whole right to the respon-
dent on demand, could he, at the same time, be entitled
to call upon the respondent in chancery for his legal title ?

The equity of *Austin*, at least, was a right of suit in

1807.

AUSLIN
v.
BRADLEY

chancery ; a mere right of suit for the legal title ; and might as well be released as any other cause of action. No legal solemnities, as in the case of conveying the legal title to lands, were necessary to discharge this right of suit. This contract to convey is a constructive release of the right of suit ; and is tantamount to an agreement not to sue, which is held to be a release of the cause of action. (c)

But, it is said, that if payment of this balance was not a condition precedent to the obligation of *Austin* to convey ; yet he was only bound to convey *on demand*, which must be a *special* demand ; and that, as no demand was made upon him in his life-time, he was never in fault for not conveying ; and, therefore, was never divested of his equity to the land.

An agreement to do a thing generally, and to do it on demand, are the same thing. In neither case, is any particular time agreed upon. These petitioners have come into chancery ; and it is a settled rule in that court, that a contract is to be executed at the time of its being entered into, unless a different time be specifically agreed upon for the execution. And chancery always proceeds much farther than this ; and considers a contract as in fact performed, at the very time at which it ought to have been performed. This contract is, then, in equity, to be considered as executed from the time of its being entered into. And an execution of this agreement being a conveyance of the land to the respondent, the right of *Austin* must be considered as conveyed to him from the time of the making of this agreement.

But admitting, that payment of this balance was a condition precedent to the obligation of *Austin* to convey ; and that a special demand was necessary to fix the time of his performance ; yet, within the year, and on the 4th of August, 1806, payment was tendered to the executors, and a special demand made upon them to procure a conveyance.

(c) 4 *Bac. Abr.* 265.

To this it is objected, that in this writing of *Austin*, neither his heirs, nor executors, are named ; and, therefore, they are not bound by it : And also, that this demand upon the executors was useless, because the title was not in them, but in the heirs of *Austin*, and, therefore, they could not convey.

In answer to this objection, it may be observed, that it is true with regard to *some* contracts, the right of action dies with the person. This is true of actions which are founded in *tort* ; of marriage contracts ; and of all contracts where a special confidence is reposed in the integrity and skill of the party, for the law does not suppose, that these qualities will probably be found in his representatives. But the present contract is not of that description. Executors need not be named ; for they are included in the party. An action would lie against them to recover damages for the non-performance of this promise to convey.

The heirs not being named, it is admitted, they would not be liable to a suit for damages at common law. But there is a sound distinction between creating an obligation upon the heir, so that he would be liable on the contract of his ancestor, in a suit at common law, and merely barring his right by the alienation of his ancestor. In the first case, the heir must be named ; in the latter, he need not be, and usually is not named at all. But if the heir need not be named in the absolute alienation of his ancestor, it is clear, that he need not be named in an alienation made upon a condition precedent. And in such case, the heir will take what the ancestor had at the time of his death—an estate liable to be defeated by the performance of the condition by the grantee. Contingencies and conditions will descend as well as absolute estates ; but they are in the hands of the heir precisely what they were in the hands of the ancestor. This equity, then, in the hands of the heirs of *Austin*, is what it was in his own hands, liable to be defeated by performance of the condition : and the condition was perform-

ed, when the money was tendered to the executors, who alone had right to receive it ; and from that moment, certainly, the heirs were divested of any interest.

With respect to the bill of exceptions, it is contended, that the bequest to this witness was of a future and contingent interest : and that she was a competent witness independent of the release.

A future and contingent interest shall not exclude a witness ; but a present or vested interest, although it respect a contingency, shall exclude a witness. Thus, an heir apparent, and a creditor, have no present interest, and may testify : so a surety on a probate bond may testify in an action touching the property of the deceased, in an action in which the administrator is a party. But bail cannot testify in the suit against their principal ; nor a remainderman respecting the estate, though the remainder be contingent. Where the interest is certain, however contingent and uncertain the subject may be to which the interest relates, the witness is inadmissible. But a case in point is that of an executor interested in the undisposed *residuum* of an estate, who cannot be a witness. (d)

But it is said, that if the witness were inadmissible, her competency is restored by the release.

First, the defendants are to be paid out of this estate ; then the widow is to have one third of the whole estate ; then $2,700 is disposed of to certain legatees of whom the witness is not one ; then the residue and remainder of the estate is given to all his children of whom the witness is one. Now, we contend, that the witness has no interest in any particular thing belonging to this estate. She had nothing in this land to part with ; and the petitioners have taken nothing by her deed. If the land should be redeemed by her

(d) *Esp. Dig.* 704. 1 *Mod. Rep.* 107, *Anon. Leach's Cro. Ca·* 25, *Rhodes's case.*

alienees, it may, notwithstanding, be taken by the executors subject to the money paid for the redemption, and applied to the payment of debts, and the previous legacies. And if, upon the settlement of this estate, there should prove to be an excess beyond the debts and particular legacies, the alienee of the witness could take nothing, because her interest is in this excess, confined to it, and entirely dependent upon it, with respect to the nature, kind, and amount of property which she may receive. We do not say, that the witness *cannot* discharge her interest in this possible *residuum ;* but merely, that she cannot do it by a release or assignment of any particular thing. The witness releases her right to a pretended equity of redemption, when it appears plainly, she has no right in it ; and then offers to testify in support of the equity, which must go to increase a fund, which, the moment it is made to exceed a certain sum, becomes her own : This is an interest in the event of a suit, which, if the witness might discharge, she has not discharged.

BY THE COURT, unanimously,

The judgment was affirmed.

N n n