## BATES and others *against* COE.

That the court, in an action of trespass, disallowed a special plea of justification, on the ground that it amounted to the general issue, and ordered the defendant to plead the general issue, is no ground for a new trial, if every fact alleged in the special plea was in evidence under the general issue.

If the effect of the witness's testimony will be to augment a fund created for his benefit, he is incompetent; and it is not necessary that his interest in the fund should appear to be inevitable.

Therefore, where *A*, being in failing circumstances, and with a view to his insolvency, mortgaged his estate to *B*, *C* and *D*, to secure them for indorsements made by them, severally, for *A ;* and afterwards, on the same day, *A* made a general assignment of his property, including the mortgaged premises, to *B* and *C*, in trust for all his creditors, under the statute of 1828. c. 3.; this property was afterwards attached, by *E*, one of *A's* creditors; and in an action brought by the mortgagees, against the officer, for the taking, *F*, another of *A's* creditors, who had proved his debt under the assignment, was offered, by the defendant, as a witness, to prove the mortgage deed and assignment fraudulent and void : it was held, 1. that as the effect of defeating the mortgage would be to augment the fund in the hands of the assignees, *F* was thus far interested and incompetent; 2. that as the facts, which *F* was called to disclose, were not stated, it did not appear that his interest was balanced, by the effect of his testimony upon the assignment. [By the Chief Justice and one Associate Judge, against two Associate Judges.]

In such case, it was also held, [unanimously,] 1. that the mortgage and assignments, not executed at the same time, though on the same day, not between the same parties, and diverse in their nature and object, were not to be deemed parts of the same transaction ; 2. that the mortgage deed, being a conveyance to *B*, *C* and *D*, to secure them for indorsements made by them severally, did not contain, on its face, a trust, constituting the grantees trustees one for the other, at the execution of the deed ; 3. that this mortgage deed was not embraced by the statute of 1828. *c.* 3. *s.* 1., being neither an assignment, nor a conveyance, nor in trust for creditors, within that statute ; 4. that in the absence of actual fraud, it would not be deemed fraudulent in law, by reason of its having been executed, by a person in failing circumstances, with a view to his insolvency ; the object of the statute of 1828 being to provide a responsible trustee to receive and dis-

tribute the property assigned under it, and not to interfere with the right of *Middlesex*, the debtor of preferring creditors, or with that of creditors to secure a July, 1834. preference by attachment.

Bates
*v.*
Coe.

THIS was an action of trespass *de bonis asportatis* and *quare clausum fregit*, in distinct counts. To each of the counts the defendant pleaded a justification. The first plea, admitting the possession of the plaintiffs, and the taking, as charged, justified the same, by virtue of process, executed by the defendant, as sheriff, against the personal property of *Timothy W. Baldwin.* The second plea admitted the possession of the real estate, and the entry thereupon, and justified the same, by virtue of process, executed by the defendant, as sheriff, by attaching such real estate as the property of *Baldwin*, and also by attaching and removing his personal property, then in the plaintiffs' custody.

The material facts stated in both pleas, were, that the defendant was sheriff of the county of *Middlesex ;* that as such, he, on the 7th of *July*, 1832, received of *James Punderford*, of *Henry Oakes*, of *Ellis Potter*, *Samuel Parsons*, and *Daniel J. Pardee*, merchants in company under the firm of *Ellis Potter & Co.*, and of *Isaac Gilbert, Elias Gilbert* and *Levi Gilbert*, merchants in company under the firm of *I. Gilbert & Sons*, four several writs of attachment against *Timothy W. Baldwin ;* by virtue of which he, on the same day, entered into and upon the premises described in the declaration, and levied said several writs of attachment thereon, as the property and estate of said *Baldwin*, then in possession of the plaintiffs in this suit ; that on the same day, he also attached, by virtue of said writs, and carried away, various articles of goods and chattels, the property of said *Baldwin*, in the possession and custody of the plaintiffs, described in a schedule referred to ; and that the plaintiffs in said writs respectively recovered judgments against said *Baldwin*, for certain sums of money, took out executions thereon, and had them duly levied and satisfied out of the goods and estate attached.

The plaintiffs, by their counsel, objected to receiving and answering the special pleas, on the ground that each of them amounted to the general issue. The court sustained the objection, and refused to compel the plaintiffs to receive and answer those pleas. To this decision of the court the defendant

*Middlesex,*
*July, 1834.*

Bates
*v.*
Coe.

excepted; and afterwards pleaded the general issue, with notice that he should give in evidence the several matters stated in such special pleas.

The cause was tried at *Haddam, November* adjourned term, 1833, before *Bissell,* J.

The plaintiffs, to prove their title to the property mentioned in the declaration, gave in evidence a release mortgage deed from *Timothy W. Baldwin* to them, executed and recorded, on the 28th of *April,* 1832. The real estate conveyed consisted of a tract of land on the main street in *Durham,* containing, by estimation, an acre and a half, with a dwelling-house, store, and other buildings thereon. The personal property embraced by the deed, was thus described : " All and singular the following articles and personal estate, *viz.* all the goods, wares and merchandize, consisting of dry goods, groceries, hardware, fancy ware, leather, boots and shoes, together with every other article of personal estate, now contained and being within and about the aforesaid store, the precise value of which articles is not ascertained, but supposed to be about 4,000 dollars ; also, one chaise and harness, one two-horse wagon, one one-horse wagon and harness, two one-horse sleighs, ten cords of oak and walnut fire-wood ; also, all the stock, leather, boots and shoes, whether made or unmade, now in the possession of *Charles Miller,* of *Durham,* all estimated to be of the value of 1600 dollars ; also, all the notes, accounts and demands, contained in a schedule annexed, amounting, in the whole, to the estimated sum of 5000 dollars;" authorizing and empowering the grantees " to sue for, collect and receive the several sums due on said notes, accounts and demands, and exercise and use all legal and necessary means, in the grantor's name, for that purpose."

The condition of the deed was, that the grantor should indemnify and save harmless the grantees, and each of them, from all loss, damage and expense, on account of their having severally indorsed, for the sole benefit and accommodation of the grantor, sundry promissory notes, particularly described, amounting to 12,473 dollars, 23 cents.

The plaintiffs claimed to have proved, that they took possession of said property under the deed, and, with all convenient despatch, made an inventory thereof; and that the defendant had forcibly taken said property from them.

The defendant, pursuant to the notice given, justified the ta-

king of said property, by virtue of sundry writs of attachment, to him delivered, as sheriff of the county of *Middlesex*, against *Timothy W. Baldwin*, which, he claimed, had been duly served and returned according to law. The defendant also read in evidence an assignment, by said *Baldwin*, to *Daniel Bates* and *Parsons Coe*, two of the plaintiffs, which was executed and delivered, at the same place and immediately after the mortgage deed, and was recorded in the records of the court of probate, on the 29th of *April*, 1832, all in due form of law ; and on the 13th of *July*, 1832, *Parsons Coe* accepted the trust, and gave bonds to the court of probate, pursuant to the statute. (*a*) The assignment was as follows :

" To all people to whom these presents shall come, Greeting : —Know ye, that whereas I, *Timothy W. Baldwin*, of *Durham*, &c., being in embarrassed circumstances, and unable, immediately, to pay in full all my just debts, and being desirous to pay from the avails of my estate, all my creditors, so far as I may be enabled so to do, in equal proportion to the amount of their respective demands :—Now, therefore, in consideration of the premises, and of the sum of one dollar, received to my full satisfaction of *Parsons Coe* and *Daniel Bates*, both of said town of *Durham*, I do hereby give, grant, bargain, sell, convey and deliver, to the said *Parsons Coe* and *Daniel Bates*, all my estate, both real and personal, in possession, remainder and reversion, both in law and equity, except such estate only as is

(*a*) *May Session*, 1828. *c.* 3. *p.* 182. By the 1st section of that act, it is provided, " That all conveyances and assignments of any lands, tenements, goods, chattels or choses in action hereafter made, directly or indirectly, by any person in failing circumstances, with a view to his insolvency, to any person or persons, in trust for his creditors, or any of them, shall, as against the creditors of the person making such conveyance or assignment, be deemed and adjudged fraudulent and utterly void, unless the same be made in writing, for the benefit of all said creditors, in proportion to their respective claims, and be lodged for record in the court of probate," &c.

The 2nd section provides, " That the trustee or trustees constituted as aforesaid, shall give bond, with surety, to the judge of said court of probate, in such sum as said judge shall require, conditioned that said trustee or trustees, shall faithfully perform their duties according to law. If any trustee refuse or neglect to comply with such order, the said court shall remove him from the office and duty of trustee. In all other cases, on the complaint of any person interested in the trust, said court may remove any trustee of the property so assigned, on giving him due notice of such complaint, and sufficient cause being shewn for such removal."

*Bates*
*v.*
*Coe.*

not subject by law to execution or attachment; and also, all notes, accounts, and other demands and choses in action, due to me, of every description and nature whatever, wheresoever said estate may lie and be situated, and from whomsoever said choses in action may be due.— *To have and to hold* said real estate, and all and each article of my personal property, and each of the several choses in action aforesaid, to them, the said *Parsons Coe* and *Daniel Bates,* and to their assigns, *in trust,* for the use and benefit of all my said creditors, and in conformity to a certain statute law of the state of *Connecticut*, entitled " an act in addition to an act entitled an act against fraudulent conveyances."    And said trustees are hereby authorized, empowered, and directed to take possession of all my said real and personal estate, to make, or cause to be made, a true and perfect inventory and appraisment of my estate, so assigned in trust as aforesaid, and a list of my said credits and choses in action, in pursuance of the act aforesaid.    And said trustees are hereby authorized and directed to apply the avails of my said real and personal estate, so assigned in trust, as aforesaid, to the payment of the expenses and incidental charges of conducting and settling said trust,— taxes and debts due to this state, and the debts of my said several creditors, in proportion to the sums which shall be found due ; and to proceed and act, in all respects, in pursuance of the provisions and according to the true intent and meaning of the act aforesaid."

The defendant claimed, that both the deed and the assignment were fraudulent and void as against the creditors of *Baldwin ;* to prove which he offered *William S. Camp* and others, as witnesses ; to whose testimony the plaintiffs objected, on the ground that they were creditors of *Baldwin*, at the time of the execution of these instruments, and that their respective claims had been proved and allowed, by the commissioners, under the assignment ; and that they were, therefore, interested in the event of the suit.    The court sustained the objection, and rejected the witnesses.

The defendant claimed to have proved, that the assignment was made by *Baldwin*, with a view to his insolvency, under failing circumstances, and for the purpose of giving preference to the plaintiffs over his other creditors; and that it was not made *bona fide*, but as a mere cover to keep off other attachments, and to delay other creditors ; that said *Bates* and *Coe,*

named as trustees, in the assignment, never intended to act under it, and did not act under it, until after the defendant attached said goods; and that said two instruments were in fact so connected with each other, that they were both fraudulent and void; and requested the court to charge the jury, that if they should find the facts so proved, then said conveyances were a fraud upon the law, and void; although the several liabilities of the plaintiffs were *bona fide* and correctly stated in the mortgage. The defendant further claimed, that the mortgage deed, being made to the three plaintiffs jointly, and their liabilities being several, the three were, by the terms of the deed, trustees for each other, and therefore, that the deed was fraudulent and void, under the statute of 1828; and that it was also fraudulent and void under that statute, on the ground of its being made with a view to the insolvency of the grantor, and not for the benefit of all his creditors; and the defendant prayed the court so to charge the jury.

The court did not charge the jury, as requested by the defendant, but charged them as follows: "The case turns entirely upon the validity of the mortgage deed of the 28th of *April*, 1832. It is claimed to be fraudulent, both in law and in fact. Upon the first claim, it is the duty of the court to instruct you. The latter presents a question within your exclusive cognizance.

"1. It is claimed, that the deed, being made, when the grantor was in failing circumstances, and with a view to his insolvency, is therefore void, under the statute of 1828. Upon this point, the court instruct you, that at common law, a debtor has a right to prefer one creditor to another, and that this right is not taken away, by the statute of 1828; that a debtor in failing circumstances, and with a view to his insolvency, has still a right to make a mortgage or other conveyance, to secure a particular creditor, or creditors; and such conveyance, and one so made, is not necessarily fraudulent and void.

"2. It is claimed, that the mortgage deed in question, contains, on the face of it, a trust; and is, therefore, within the provisions of the statute of 1828. In the opinion of the court, the deed, upon the face of it, contains no such trust as has been claimed; for however the case might be, after the expiration of the law day, the several grantees were not constituted trustees the one for the other, at the making of the deed.

"3. Nor is it, in point of law, any objection to this deed, that a general assignment was made immediately. after it, and was in contemplation of the parties, at the time said deed was executed and delivered ; whatever may be the evidence which that circumstance may furnish, of a fraud, in point of fact.   In determining the question whether there was fraud in fact, it is proper for you to take into consideration the circumstances under which both conveyances were executed, the probable intent of the parties, and the subsequent conduct of the grantees, both in relation to the general assignment, as well as to the mortgage deed."

Under this direction, the jury returned a verdict for the plaintiffs ; and the defendant moved for a new trial, on account of the rejection of the special pleas and of the testimony offered by him, and for a mis-direction.

*Staples* and *Hitchcock*, in support of the motion, contended, 1. That neither of the special pleas offered by the defendant, amounted to the general issue ; and therefore, they should not have been disallowed.   In trespass, most defences must be pleaded specially.   And this is peculiarly the case, where an officer justifies under process.  1  *Chitt. Plead.* 539. 545. Actual possession of personal property enables the plaintiff to maintain trespass, if the property has been forcibly taken. The plea, therefore, gives the plaintiff a complete cause of action, unless the justification is sustained, by proof.   In this case, the justification sets up *new matter*—the defendant's character, the process, and the levy, and that *Baldwin's* property was taken.   The *title* to the property is not necessarily denied, by the general issue.   *Carr* v. *Hinchliff*, 4 *Barn. &· Cres.* 547. (10 *Serg. & Lowb.* 408.)   *Hallett* v. *Birt*, 12 *Mod.* 120.   *Birt* v. *Strode*, 12 *Mod.* 97.   *Saunders's* case, 12 *Mod.* 513.   *Thomas* v. *Nichols*, 3 *Lev.* 40.

The second plea admits the plaintiffs' possession and the entry.   This gives the plaintiffs a complete cause of action. This is then met, by the defendant's justification ; which is *new matter*—*viz.* the process, his character, and the levy upon the land and the goods.   The general issue would deny the possession and the entry.   Possession alone is a good title against a wrong-doer.   Hence, the defendant justifies his en-

try and shews it lawful. *Cooke* v. *Birt*, 5 *Taun*. 765. *Johnson* v. *Leigh*, 6 *Taun*. 246. 6 *Halst*. 43. 7 *Cowen* 35.

2. That the witnesses offered by the defendant, were improperly excluded. They were offered to shew, that both the mortgage and the assignment were void, for actual fraud. Hence they were called to testify against any interest, which they might be supposed to have under the assignment. But if they had been offered merely to destroy the mortgage deed, they would have been admissible, for they had no present, certain vested interest. 2 *Stark. Ev.* 744. First, they had no *present* interest; for if the mortgage were removed, the defendant would still hold the property in opposition to the trustees under the assignment, denying all their right. *Adams* v. *Butts*, 9 *Conn. Rep.* 79. *Fairchild* v. *Beach*, 1 *Day* 266. *Phelps* v. *Winchel*, 1 *Day* 269. Secondly, they had no *certain* interest ; for the verdict and judgment in this suit, would not be evidence for the trustees. Thirdly, they had no *vested* interest ; for it was all subject to the contingency of a law-suit. The plaintiffs hold the property, denying the right of the trustees. The defendant would do the same. It is no ground of excluding the witnesses, that the trustees would have a better chance of success against the defendant, than against the plaintiffs. 2 *Stark. Ev.* 752. *Page* v. *Weeks*, 13 *Mass. Rep.* 199. 201.

Where a witness is *liable* to the plaintiff or to the defendant, he is admissible, on the ground that it is indifferent to him which party succeeds. *Barnwell* & al. v. *Mitchell*, 3 *Conn. Rep.* 101. If the witness has the same *claim* on the plaintiff or defendant, he is also indifferent between them. The result is this : if the mortgage and assignment are both void, as the defendant claims, the witnesses have no interest ; if the mortgage is void, and the assignment is valid, the interest of the witnesses (if they have any) is *balanced*, being equally in opposition to both.

3. That the mortgage and the assignment were invalid. First, these instruments being intended, by the parties, to make one entire disposition of the property, and both being in contemplation at the same time, by a failing debtor, and both executed and delivered, at nearly the same moment, make but one instrument, and are, therefore, both fraudulent and void.

Middlesex,
July, 1834.

Bates
*v.*
Coe.

*Isham* v. *Morgan* & al. 9 *Conn. Rep.* 374. *Riggs* & al. v. *Murray* & al. 2 *Johns. Ch. Rep.* 565. 581.

Secondly, the mortgage, being made with a view to insolvency, is a fraud upon the statute of 1828. 2 *Hovend.* 367. Ex parte *Scudamore,* 3 *Ves.* 88.

Thirdly, upon a sound construction of the mortgage, it creates *trusts ;* and is, therefore, void. *Dalamere* v. *Barnard, Plowd.* 352. 4 *Kent's Com.* 304, 5. *Lloyd* & al. v. *Spillet* & al. 2 *Atk.* 150. *Boyd* v. *McLean* & ux. 1 *Johns. Ch. Rep.* 582. The facts may be proved by parol, and that against the face of the deed, and in opposition to the answer of the trustee, and after the death of the purchaser. If part of the money be paid by a third person, there will be a resulting trust in his favour *pro tanto.* 4 *Kent's Com.* 306. 2 *Sw. Dig.* 112. *Botsford* v. *Burr,* 2 *Johns. Ch. Rep.* 405. 410. Where the purchase money is paid by *A,* and the deed is taken to *A* and *B, B* is a trustee for *A.* 2 *Sw. Dig.* 112. 10 *Ves.* 367. 2 *Cox,* 92.

Here, the conveyance is to three, to secure the separate liability of each. This is equally a trust in the three, for the separate use of each. The statute of 1828, as positively prohibits indirect trusts, as those which are direct ; implied, as express ; those apparent by parol proof or construction, as those declared on the face of the deed. Trusts are always executory as between trustee and *cestuy que trust.* Hence, a springing trust, a shifting trust, an executory trust, are all at least indirect trusts and violations of the statute of 1828.

The inquiry to be made, to ascertain whether this is a trust, is, what are the grantees, considered as one trustee or person, to do with the land ? The answer is, the three hold the legal title for the separate use of each ; or they hold it for the better security of the debts secured by their separate indorsements ; and therefore, subject to a trust. The remedy of each one against the others must be in equity ; for at law, they have equal moieties in the land. *Treadwell* & al. v. *Bulkley* & al. 4 *Day* 395. The three mortgagees make a preferred class of creditors ; and are so preferred, by the operation of the deed ; which, therefore, is void. If mortgages had been made of the property *successively* to the three, then they would not have been a preferred class ; for each would have had to redeem or foreclose the others. The first would not have been accountable to any of the others. Now, they cannot foreclose

or redeem each other. They are accountable among themselves in equity; and are, therefore, trustees, and a preferred class of creditors. A creditor could never get any interest in the property until all the debts of the three were separately paid. But if separate mortgages had been made to each, he could then have got the equity of either, separately. Thus, the property is locked up, by the trusts, which arise among the three, for their separate use.

*Sherman* and *Storrs,* contra, contended, 1. That the special pleas offered by the defendant, amounted to the general issue, as they denied what the plaintiffs were bound to prove. 1 *Chitt. Plead.* 497. 556. *Possession,* as against the creditors of *Baldwin,* was of no importance. If the pleas admitted *property* in the plaintiffs, and then justified the entry and taking, they would be good; but that was the very point in controversy.

2. That if the special pleas did not amount to the general issue, still the decision of the court on this point is not a ground for a new trial. The plaintiffs had an election to demur, or to move the court to reject the pleas; and their remedy, in the former case, was by writ of error, and in the latter, by *mandamus.* But after the cause has been tried on its merits, and complete justice has been done, (for aught that appears to the contrary,) there is no reason for trying it again; nor is there any rule of law requiring this to be done.

3. That the testimony of *William S. Camp* and others was properly excluded. The plaintiffs' title rested *wholly* on the mortgage, and not at all on the assignment. The latter would not enable them to recover on this declaration; because two only of the plaintiffs had title under it, and there are *too many* plaintiffs to stand on that title. Therefore, the testimony could have no effect on the assignment: its validity was not on trial. Had the defendant recovered, the following effects would result. First, the title of the assignees, under which the witnesses claimed, being posterior to the plaintiffs' title, and anterior to the defendant's, a recovery by the defendant would absolve him, forever, from any claim by the plaintiffs, and leave the property in his hands liable to be taken only by some superior title. As against him, the assignees have a prior title and could recover; because the conveyance to the assignees is the

*Middlesex,*
July, 1834.

Bates
*v.*
Coe.

oldest. If the plaintiffs in this suit recover, the defendant could resist an action by the assignees, on the ground that the title was in the mortgagees, and had been enforced; and that title was superior to both. If the defendant recovers, he cannot set up any defence against the assignees; because he has the property, and has estopped the claim of the mortgagees against him, and cannot, therefore, set up the mortgage which he has overcome, and which is the only claim superior to that of the assignees. The inevitable effect of this judgment, if for the defendant, is, therefore, to enable the assignees to get the property, as their title is prior to that of the defendant. Consequently, these witnesses, by such an event of the suit, become legally entitled, through their assignees, to the whole of the property in question.

Secondly, the plaintiffs are not creditors: those whom the defendant represents, are. Should the assignees never claim the property of these creditors, yet as their debts are paid, in part or in whole, if they keep it, their claim for dividends is diminished *pro tanto*, and the witnesses profited in proportion.

4. That the mortgage deed, under which the plaintiffs claim, is valid. It has no connexion with the assignment. The parties are not the same; they were executed at different times, and for different purposes. It is true, that two of the mortgagees were also assignees; but this does not constitute identity of party. Besides, they were liable, as assignees, to be removed, at any time, by the court of probate. It is also true, that both instruments were executed on the same day, but not simultaneously; and whether five minutes or five hours apart, is of no importance. The question of actual fraud was distinctly submitted to the jury, and has been decided by their verdict.

The statute of 1828 does not intend to impair the right of preferring creditors, except when attempted in a particular manner, *viz.* by way of *trust*. A bankrupt law was not intended. The only question then, is, whether this deed creates a trust for creditors. The estate is a legal, not an equitable estate. Each of the grantees took one third of the property. For a violation of his right, his remedy is at law. Circumstances may exist, in which a trust will arise; but it is not created by the instrument; and whether it will ever arise, depends on the mortgagor, not on the mortgagee. Neither of the

plaintiffs has any debt ; and if the mortgagor pays, as he ought, never will have. They not being creditors, no trust will be raised, by a court of equity. A trust is raised, in equity, to accomplish an *equitable* object.

An indorser could not prove a debt under the assignment. Of course, he could get no security, except by mortgage.

The great object of the statute was to provide for the responsibility of the trustee, without resorting to a court of chancery.

DAGGETT, Ch. J. The questions presented and discussed will be considered in the order in which they appear on the motion.

1. It is said, that the court erred in refusing to compel the plaintiffs to receive the special pleas. Whether these pleas ought to have been received, is a question, which I deem it unnecessary to decide. It is attended with some difficulty ; and is wholly unconnected with the merits of the cause ; for it is apparent, that every fact was in evidence under the general issue, and was considered by the court and jury. As no injury has arisen, or could arise, to the defendant, by the course pursued by the court in relation to these pleas, I am of opinion, that it would be a departure from principle to allow this motion to prevail on that ground.

2. Another ground suggested for a new trial, is, the rejection, by the court, of *William S. Camp* and others, offered by the defendant, as witnesses, to prove the mortgage deed and assignment fraudulent and void. The plaintiffs claimed under the mortgage deed made prior to the assignment. The witnesses offered were creditors of the grantor in both deeds, and had proved their debts under the assignment.

Here, it is said, first, that their interest is *balanced.* This answer supposes that they are interested. If so, the court must be satisfied that the interest is balanced. This is attempted, by alleging, that they were offered to show both instruments fraudulent. But to support this answer, the facts which they were to disclose, should have been distinctly stated ; otherwise, it could never appear, that their interest would not preponderate. In *Barnwell* & al. v. *Mitchell,* 3 *Conn. Rep.* 101. this principle is illustrated. The witness was liable to the plaintiff, or to the defendant, to pay a certain sum. He is admitted as a witness, on the ground that it is indifferent to him, to

*Middlesex,*
*July, 1834.*

Bates
*v.*
Coe.

whom he is to pay it. But how can it be ascertained, without further facts, that the interest of these persons was balanced?

Again, it is said, that if they were interested in the *question*, still that would not exclude them, unless they were interested in the *event of the suit.* This is true. It is also said, that this verdict never can be given in evidence in any future action in which these creditors might be parties. But that is not the only criterion, by which to decide the question of interest in the event of the suit. "If the effect of the witness's testimony will be to prevent the diminution of a fund created for his benefit, he is incompetent; and it is not necessary that the interest of the witness in the fund should appear to be inevitable." *Stebbins* & al. v. *Sackett,* 5 *Conn. Rep.* 258. *Phœnix* v. *The Assignees of Ingraham,* 5 *Johns. Rep.* 427. *Austin* v. *Bradley,* 2 *Day,* 466. *Craig,* admx. v. *Cundell,* 1 *Campb. Rep.* 381. 1 *Phill. Ev.* 52.

Let this principle be applied to the present question. Here, the plaintiffs claim, by the mortgage, to take the property in question from the attaching creditors. This mortgage is the prior lien. Then comes the assignment, by which all the property is transferred to the creditors. A part of these creditors have attached this property. The persons offered as witnesses have proved their debts under the assignment. They are now called upon to testify to defeat the mortgage, and thus augment the funds in the hands of the assignees, to which they look for payment of their debts. If that mortgage is defeated, will not their condition be bettered? They, therefore, are interested in the event of this suit. This is the result to which I have come.

3. As to the validity of the mortgage, under which the plaintiffs claim, it is said, first, that it is to be taken as part and parcel of the assignment; because having been executed about the same time, and its object being the same, it is to have the same effect. To this position are cited several authorities. 1 *Sw. Dig.* 227. *Isham* v. *Morgan* & al. 9 *Conn. Rep.* 374. *Draper* & al. v. *Jennings* & al. 2 *Vern.* 518. It is indeed true, that where two instruments are executed at the same time, between the same parties, relative to the same subject matter, and to effectuate one object, they are to be taken together; but where two deeds are given to different persons,

*Middlesex,*
July, 1834.

Bates
*v.*
Coe.

for different considerations, not executed at the same time, nor relative to the same subject matter, nor to effectuate the same object, nor in pursuance of a contract made by the grantees jointly, they will be considered and take effect as separate instruments. To this extent, and no further, the cases cited go. There is nothing common between these instruments, except the property conveyed. The mortgage was first in point of time; then the deed of assignment. They are not between the same parties. *Daniel Bates, Parsons Coe,* and *Benjamin Baldwin* are the mortgagees; and *Daniel Bates* and *Parsons Coe* are the assignees. The mortgage is conditional,—to secure debts and against liabilities : the assignment is absolute,—to pay creditors. It is beyond comprehension that these instruments, in their nature and object thus diverse, should be deemed part of the same transaction.

Secondly, it was insisted, by the counsel for the defendant, that this mortgage deed contains, on the face of it, a *trust.* I am satisfied with the notice taken of this point, by the judge at the circuit. His charge is : " The deed, upon the face of it, contains no such trust as has been claimed ; for however the case might be, after the expiration of the law-day, the several grantees were not constituted trustees, the one for the other, at the making of the deed."

But thirdly, the great point under this head, and indeed in the case, is, whether this mortgage deed is fraudulent and void, under and by virtue of the statute of 1828. *c.* 3.

It is believed, that this is the first time, that this question has come under the consideration of this court for decision. It is now distinctly insisted, that this mortgage, being made with a view to insolvency, is void. On this part of the case, the judge instructed the jury, that it was not, *on that account,* and *for that reason,* void ; leaving, very properly, the question whether it was fraudulent, *in fact,* to the jury, upon the evidence. I now concur with that judge in his construction of the act of 1828.

The first section of the act (*chap.* 3. *p.* 182.) is in these words : " That all conveyances and assignments of any lands, tenements, goods, chattels, or choses in action, hereafter made, directly or indirectly, by any person in failing circumstances, with a view to his insolvency, to any person or persons, in trust for his creditors, or any of them, shall, as against the

HARVARD LAW LIBRARY

*Middlesex,*
*July, 1834.*

———————

Bates
*v.*
Coe.

creditors of the person making such conveyance or assignment, be deemed and adjudged fraudulent and utterly void, unless the same be made in writing, for the benefit of *all* said creditors, in proportion to their respective claims," &c.

In the first place, the statute does not embrace the instrument. It does not, therefore, prohibit a *mortgage,* "by a person in failing circumstances, with a view to his insolvency." The prohibition is of *conveyances* and *assignments.* But surely, a mortgage is not an assignment : for that passes the whole interest in the thing assigned ; whereas a mortgage creates a lien only in favour of the mortgagee. Nor is it a conveyance, within the meaning of that term, as it has been understood, by jurists in *New- York, Massachusetts, Maine* and *Connecticut,* for the last thirty years ; and by *English* judges, for the last half century. For the *English* doctrine, see *Martin* v. *Mowlin,* 2 *Burr.* 978, 9. *The King* v. *St. Michaels, Doug.* 602. *The King* v. *Edington,* 1 *East,* 288. In *New- York : Hitchcock* & ux. v. *Harrington,* 6 *Johns. Rep.* 290. *Runyan* v. *Mersereau,* 11 *Johns. Rep.* 534. *Green* v. *Hart,* 1 *Johns. Rep.* 590. *Johnson* v. *Hart,* 3 *Johns. Ca.* 329. *Jackson* v. *Willard,* 4 *Johns. Rep.* 42, 3. *Sedgwick* v. *Hollenback,* 7 *Johns. Rep.* 376. 380. *Collins* v. *Torry,* 278. *Coles* v. *Coles,* 15 *Johns. Rep.* 319. *Titus* v. *Neilson* & al. 5 *Johns. Ch. Rep.* 452. 4 *Kent's Com.* 160. In *Massachusetts : Groton* v. *Boxborough,* 6 *Mass. Rep.* 50. *Goodwin* v. *Richardson,* 11 *Mass. Rep.* 469. *Bolton* v. *Ballard,* 13 *Mass. Rep.* 227. *Snow* v. *Stevens,* 15 *Mass. Rep.* 278. In *Maine : Blaney* v. *Bearce,* 2 *Greenl.* 132. In *Connecticut : Gunn* v. *Scovil,* 4 *Day* 234. *Reeve's Dom. Rel.* 560. *Fish* & al. v. *Fish,* 1 *Conn. Rep.* 559. *Barkhamsted* v. *Farmington,* 2 *Conn. Rep.* 600. *Leonard* v. *Bosworth,* 4 *Conn. Rep.* 421. *Huntington* v. *Smith,* 4 *Conn. Rep.* 235. *Roath* & al. v. *Smith* & al. 5 *Conn. Rep.* 133. *Swift,* exr. v. *Edson* & al. 5 *Conn. Rep.* 531. See also the very learned opinion of the late Ch. J. *Hosmer,* in *Clark* v. *Beach,* 6 *Conn. Rep.* 142. The court, it is true, did not concur in opinion with him on the main point ; but his reasoning and authorities were recognized, by the court, as will be seen at page 150. of the same case.

The result of all these cases, is, that a mortgage is not a *conveyance* of the land, but a charge or lien upon it ; and that

the mortgagee's interest is a chattel; and that he is vested with the right to maintain ejectment to obtain and appropriate the pledge. Nor is the mortgage in question, in any sense, a conveyance " to his creditors, in trust for them, or any of them." The transfer, to come within the statute, must be *in trust* for creditors; but we have seen above, that this mortgage is no trust. A trust is where an estate is held for the use of another; but this, surely, is not true of a mortgage. The mortgagee may become, by the happening of certain events, a trustee for the mortgagor; but, in no sense, is this true of him upon the creation of the mortgage.

In the next place, this statute does not profess to break in upon the long established doctrine of the common law, that a debtor may prefer one creditor to another; nor upon our law authorizing the attachment of the real and personal property of the debtor. It is insisted, by the counsel for the defendant, that the great object of the enactment of 1828, was, that the estate of an insolvent debtor should be equally distributed among his creditors. If such was their object, it is very strange that no suggestion of the kind, no provision to effectuate such intention, should appear. Nor can it be believed, that the legislature intended any thing in nature of a bankrupt law. Such a law cannot co-exist with the subsisting provisions respecting attachments.

The single object, so far as I can discern, was, to provide a responsible trustee to receive property, when assigned for the benefit of creditors, and to cause it to be distributed proportionally among those creditors; but not at all to interfere with the long established principle of a debtor giving a preference voluntarily, or with a law of *Connecticut* of ancient standing authorizing a preference by attachment.

If, then, this mortgage is not a conveyance or assignment in trust, within the purview of the act, and if the common law right still exists of preferring creditors, it cannot be said, that in point of law this deed was a fraud upon the statute of 1828; and the plaintiffs were entitled to recover, unless the evidence was such as to satisfy the jury of fraud in fact. This question was fairly submitted to the jury.

A new trial, therefore, must be refused.

BISSELL, J. was of the same opinion.

*Middlesex,*
July, 1834.

Bates
*v.*
Coe.

CHURCH, J.   It has not been suggested, that the witnesses whose testimony was rejected, on the trial, were otherwise interested in the event of the suit, than that they were interested in the fund created by the assignment of *Timothy W. Baldwin* for the benefit of his creditors, of whom these witnesses were some whose debts had been allowed.

It is conceded, that if this fund would not be increased, by the recovery of the defendant, nor diminished, if the plaintiffs recover, these witnesses are not interested in the event, however they may feel themselves interested in the question on trial.

The assignees of *Timothy W. Baldwin,* who are the only representatives of the fund created for the benefit of his creditors, are neither parties nor privies to this action ; but the suit is in favour of the mortgagees of *Baldwin* against the sheriff, who acts for the attaching creditors of *Baldwin,* to recover certain articles attached ; and nothing else is affected by this suit. The truth is, that both plaintiffs and defendant claim this property adversely to the assignees of *Baldwin ;* adversely to all the other creditors of *Baldwin,* among whom are the witnesses whose testimony was rejected ; and it is not perceived, how the result of this controversy can operate upon their interests at all. The assignees of *Baldwin* can, notwithstanding any judgment which may be rendered in this suit, maintain an action either against the plaintiffs, (the mortgagees,) or against this defendant, or the attaching creditors, unembarrassed by this judgment.

If this action had been brought, by the assignees of *Baldwin,* against the mortgagees, these witnesses could not have been admitted to defeat the mortgage ; because the avails of the judgment recovered by the assignees, would increase the fund in which they had an interest.   The consequence would have been the same, in a suit between the assignees and the attaching creditors, and the witnesses had been called to support the assignment or defeat the attachment.   So also, if the suit had been between the mortgagees and the assignees, these witnesses could not be received to destroy the mortgage, and thereby preserve the fund from diminution.   But here the case is widely different.   If the plaintiffs, the mortgagees, shall recover, in the present case, the amount recovered goes into their own pockets, and not to the fund ; and if the defendant shall recover, the property attached is sold, and the avails paid over

*Middlesex,*
July, 1834.

Bates
*v.*
Coe.

to the attaching creditors, and the fund receives nothing.  How then, can these witnesses be interested in this controversy ?

It was suggested in argument, that if, by reason of the testimony of these witnesses, the defendant should recover, the attaching creditors would, in consequence, receive payment of their debts, partially or entirely, and would thereby be prevented from coming in to participate in the fund, and thus leave a more ample dividend for these witnesses.   It should be remembered, that the mortgagees are creditors also ; and that whatever of their debts is left unpaid, by the recovery of the defendants, is a charge upon the fund ; and they, instead of the attaching creditors, will come in for a dividend ; so that the fund remains the same.   It may be remarked, however, in reference, as well to the aforesaid suggestion, as to the answer to it, that it no where appears, that either the attaching creditors, or the mortgagees, had ever exhibited their respective claims to commissioners under said assignment, or that either of them could come in for a dividend.   I have, therefore, not been able to discover any legal interest in the witnesses excluded, which should have prevented them from giving evidence at the trial ; and for this reason alone, I think a new trial should be granted ; although upon all other questions, determined by the court, I entirely concur.

WILLIAMS, J. was of the same opinion.

PETERS, J. gave no opinion, being absent.

New trial not to be granted.