Ranney, J.
It is claimed, on the part of the complainants, that ■the mortgage made by Daniel Leiby to George, Jacob, and Joseph Leiby. brings the case within the provisions of section 3 of the act of March 14, 1838 (Swan’s Stat. 717), relating to assignments of property by insolvent debtors, in trust, with the design of preferring some creditors to the exclusion of others; and that, in accordance with its provisions, the avails of the mortgaged property *608, 609 should be divided, pro rata, among all the creditors of Daniel Leiby. The statute provides that “ all Assignments of property in trust, which shall be made by debtors to trustees, in contemplation of insolvency, with the design to prefer one or more creditors to-the exclusion of others, shall be held to inure to the benefit of all the creditors, in proportion to their respective demands.”
The condition of this mortgage is as follows:
“ Provided, nevertheless, and this deed is on this condition, to-wit: Whereas, the said George Leiby, Jacob Leiby, and Joseph Leiby are indorsers and security for the said Daniel Leiby, in divers sums of money and debts, due and to become due from said Daniel Leiby to divers persons. Now, if the said Daniel Leiby, his heirs or assigns, shall well and truly pay, or cause to be paid, the said debts and sums of money as aforesaid, amounting to about the sum of seven thousand dollars, and shall also pay to Dr. Wampler, John Shafer, Samuel Lucas, Isaac Gardner, and Aaron Eussell, all of Butler county, Ohio, the several sums of money owing by the said Daniel Leiby to them; then these presents shall be void and of no effect; otherwise, to be and remain in full force and virtue in law and equity.”
That Daniel Leiby was insolvent at the time of its execution,, and that it was designed to give the persons named in the condition a preferred lien upon nearly all the property he held, are not controverted facts. But it is very confidently claimed that a mortgage is not an assignment within the meaning of this act, and is in no way governed or affected by it; that a mortgage creates a mere lien upon the property mortgaged, and not a conveyance of it, and that the mortgagee is, in no just sense, a trustee, even for-other creditors whose debts are secured by it. In support of these positions, the following cases are relied upon: Bates v. Coe, 10 Conn. 294; Henshaw v. Sumner, 23 Pick. 446; Low v. Wyman, 8 N. H. 536; Barker v. Hall, 13 Ib. 298.
It is evident the case depends upon the solution of two questions : Was the mortgage, in substance and legal effect, an Assignment, within the purview of this act; and if so, did it invest the mortgagees with a valuable interest to be held for the benefit of a part only of the insolvent debtor’s creditors? It is now well settled that the statute does not absolutely disable the insolvent debtor from using his property for the purpose of paying or securing individual creditors, while he leaves others unprovided *610 for. This was so hold in the early case of Hull v. Jeffrey, 8 Ohio, 390; and although some doubt was thrown over the subject by the ■case of Mitchell v. Gazzam, 12 Ohio, 315, it has been entirely removed by the subsequent cases. In these cases it has been determined that the statute does not affect a mortgage, given by an insolvent debtor, to secure the debt of one of his creditoi's, or to indemnify him against a liability, by indorsement or otherwise, assumed for the benefit of the debtor; although it may have the effect-to prefer such creditor, and deprive others of the ability to ■obtain satisfaction of their claims. Fassett v. Traber, 20 Ohio, 540; Doremus v. O’Harra, 1 Ohio St. 45; Atkinson v. Tomlinson, 1 Ib. 237.
This statute was not designed to supply the place of a bankrupt ■or insolvent law, by compelling an equal distribution of the property of an insolvent debtor among his creditors ; and the attempt to do so, by preventing him from using it in the payment or security of particular creditors, would have been little less than absurd, while it was confessedly within their power to obtain the ■same preference, by liens or levies, upon judgments confessed by him. Such a construction of the statute finds no warrant in its ■language, or the objects and purposes for which it was enacted.
To bring a case within the operation -of the law, there must be a transfer or conveyance of property, or some valuable interest belonging to the insolvent debtor, in view of his insolvency, to be held by the person taking it, for the benefit of some one or more of the creditors of the debtor other than himself.
But we are clearly of opinion that an assignment, by way of mortgage, may affect such transfer; and in such case the mort*gagee becomes a trustee for such creditor or creditors, and liable to account to him or them for the interest so received. In no one of the' cases decided in this state has this been doubted. On the contrary, it has been taken for granted; and where mortgages have been supported, instead of the short and conclusive answer being given that the instrument employed was not within the statute, the court hasamiformly rested its judgment upon the solid reason that the mortgagee was not made a trustee for any other creditor. In exact propriety of language, it is very true a mortgage is not an assignment; nor when the same strictness is applied is an absolute conveyance of real property an assignment. But we are not construing a penal statute. This statute is of the most *611 beneficial character, and the uniform language of the court has been, that it ought to receive a most liberal construction. It promotes justice and equity, by compelling an equal distribution of the effects of an insolvent debtor among those equally entitled. It permits every creditor of such a debtor to reap the rewards of his diligence, where he does no more than to secure himself, but denies him the right to stand between the insolvent and some of his ■other creditors, and secure them a preference to the injury of those not provided for. It allows the debtor to use his property for the payment or security of any of his debts; but the moment he attempts to create a trust, with a preference for any of his creditors, ■by surrendering any of his property in any form, the statute steps in and declares it a trust for all. As soon as he puts any portion of his property beyond his power for such a purpose, the law deprives him of all ability to direct or control its ultimate destination. It deprived him of this power because it was found to be mischievous and unjust; and as the statute was passed to furnish the remedy, it should be so construed as to make it effectual. This can only be done by looking at its spirit and purpose, and holding cases falling within the mischief, intended to be remedied, .to be within the act.
If, then, the mischief to be suppressed was the power that ^insolvent debtors before had of directing the application of. trust'funds created by them, so as to secure preferences among their creditors, how can it make any difference in what manner the fund is created? That a mortgage is just as effectual as an absolute deed to create such a fund, just as fully disposes of the debtor’s property, and-secures the same inequitable preference to the favored creditors, and works the same wrong to those not preferred, can not be doubted. It could make no possible difference, either to the preferred creditors or those unprovided for, whether the debtor’s property was appropriated in the one way or the other, while the •debtor’s power over the distribution of the' fund, by simply changing the form of the instrument, would remain wholly unimpaired. With such a construction, it is not too much to say the statute is a perfect nullity. To give it such a construction is to suppose the legislature absurdly attempting to suppress a mischief in one form and leaving another, equally convenient and effectual, in which it might, with impunity, be accomplished.
*612 Wo do not deem it necessary to enter into any extended examination of the nature and effect of the mortgage deed, or of the-respective interests of mortgagor'and mortgagee in the property. It is enough that it enables the debtor to create a trust fund, in the hands of the mortgagee, for the benefit of some of his creditors to the exclusion of others, and that this is precisely what the legislature intended to deprive him of the power to do. But it is incorrect to say, that a mortgage does no more than to create a mere lien upon the property. It’operates a conveyance of the estate, by way of pledge or security for the debt, and gives to the mortgagee the benefit of all the doctrines applicable to bona fide purchasers. 3 Kent’s Com. 129. Eor a long time the mortgagee was only known as the owner, in courts of law; the rights of the mortgagor were only recognized in courts of equity. By the gradual adoption however, by the courts of law, of the rational and just principles acted upon in equity, a harmonious *system has been constructed; and a mortgage is now treated, in both courts, as a mere security for the debt, and the mortgagee is permitted to use the legal title only for the purposo of making effectual such security.
It was with this view of the nature and character of a mortgage deed, that the case of Bates v. Coe, was decided. The statute of Connecticut, which, it was claimed, avoided the mortgage, provided that all conveyances and assignments in trust, made by debtors in failing circumstances, should be adjudged fraudulent and void as against their creditors, unless made for the benefit of all of them. The mortgage in quession was made to a single creditor, and to secure a debt due to him. The court said the statute did not prohibit a mortgage, and that the conveyance was not in trust. The last position most clearly justified the judgment; and it may well be that the first is also tenable, in view of a statute that annulled the conveyance, and still have but a very remote bearing upon one like ours, which neither prohibits nor interferes with the transfer, but only acts upon the trust fund created by it; which yields to the debtor the power to make -the transfer, out of which the trust fund is to arise, but simply denies him the right to confine its benefits to a part only- of his creditors, and makes it inure to the benefit of all. The state of facts upon which the case of Heushaw v. Sumner was decided, is in no material respect different from that of Bates v. Coe, and the statute of Massachusetts is *613 substantially the same as that of Connecticut. The court held,, that no trust for creditors was created by the mortgage, taken to-secure the debt of the mortgagee; but it is nowhere intimated,, that a mortgage given to secure the debts of creditors, other than the mortgagee, might not fall within the statute. On the contrary, they carefully guard themselves upon that point by saying, that “ there was no reservation or appropriation of any portion of the mortgaged property, or its proceeds, to the use of any other individual than the mortgagees and mortgagor, or those who might subsequently acquire his *right.” The cases cited from New EAmpshire require no additional reinark.
After a very careful consideration of the subject in all its bearings, we are unanimously of the opinion that our statute requires us to hold that when any valuable interest of the insolvent debtor is transferred by any species of conveyance binding the recipient, either expressly or by necessary implication, to account in chancery to any creditor of the assignor, the statute enlarges the trust and makes it inure to the benefit- of all his creditors, and distributes the-fund to all, in proportion to their respective demands.
As this mortgage was given, and the lien upon the debtor’s property created, not only for the security of the mortgagees, but also-of sundry other creditors of the mortgagor, it unquestionably falls-directly within the principle stated, and subjects the mortgagees, who are invested with the legal title, to the liability of accounting, with the other creditors named, for a portion of the proceeds-arising from a sale of the mortgaged property, whenever it may be made.
But it is claimed that the mortgage should be upheld as a valid security, so far as the mortgagees are concerned, whatever may be its character as to the other creditors named in it. We are of a different opinion. By consenting to become the recipients of this interest for the benefit of other creditors, they have voluntarily taken upon themselves the obligation of trustees for the persons-named by the debtor, and when that is the case, the statute compels them to become trustees for all his creditors. And we are of opinion, that whenever the assignee is made- by the terms of the instrument, or by necessary implication, a trustee for any one or more of the creditors, he becomes of necessity, by force of the statute, a trustee for all, and in respect to all the property transferred by it.
*614 The case of Perry v. Holden, 22 Pick. 269, is most express and decisive upon this point.
*In that case, the persons claiming the property had taken a mortgage, for the security of their own debt, of a part of the debtor’s property; and a few hours later, a general assignment of all his property, for the benefit of all his creditors. The court held that the two instruments must be taken and construed together, as parts of the same transaction, and that both were void as against an attaching creditor; — the assignment, because the mortgage to which it was thus attached, and of which it became a part, created a preference; and the mortgage, because it could not be considered as an independent transaction, but as part of the assignment. If two separate instruments, resting in part upon distinct property, could be thus drawn together, and the fate of the one made to depend upon that of the other, and, indeed the one used to destroy the other, it would seem to be quite impossible to affect a separation, in the legal effect of the same instrument, covering the same identical property,- and designed by the parties to effect one and the same purpose. Neither justice nor public policy require the attempt. If men see fit to lend themselves to enable an insolvent debtor to give a preference to some of his creditors to the certain injury of others, they can not well complain that they are not as well off as though they had not made the attempt to effect the injustice.
The view we have taken of this case makes it unnecessary to •consider another objection taken to the mortgage, that it is void because of the uncertainty as to the amount of the debts referred to in the condition; and we therefore express no opinion upon that •question.
The decree of the district court is reversed, and the cause remanded for further proceedings.