Garretson v. Brown.

ELMER, J., concurred.

JASPER GARRETSON *vs.* JOHN J. BROWN, Assignee, etc.

1. If an assignment under the act provides for an unequal distribution of the assignor's property among his creditors, the assignment itself is void.

2. But preferences not made in and by the assignment itself, though they may be fraudulent and void under the statute, will not invalidate the assignment.

3. The assignment act was not intended to abridge or take away the common law right of every man, even when in failing circumstances, to dispose of his property, provided he does it honestly, or to pay one honest creditor in preference to another. But if a failing debtor seeks the benefit of the statute, his assignment must conform to its provisions.

4. An assignment is not void because it gives a preference to a mortgage or to a judgment creditor where the judgment was not confessed for the purpose of preferring the creditors; but a preference given in an assignment to a judgment confessed for the purpose of a preference will avoid the deed.

5. An assignment operates to convey all the assignor's property, real and personal, whether embraced in the inventory attached to the deed or not. No errors, omissions, or statements in the inventory will affect the deed.

6. If the debtor has fraudulently conveyed away any part of his property, the assignee may sue for and recover it for the use of the creditors who present their claims.

7. Any fraudulent conduct of the assignor touching the disposition of his property with reference to the assignment, will enable the creditors who come in to avoid the operation of the release.

8. The creditors who come in may compel the assignee to do his duty.

9. The legal title to the property of the assignor, once vested in the assignee, remains there until disposed of by some proper judicial proceeding, and is not liable to be seized and taken in execution under judgments

Garretson v. Brown.

entered against the assignor, even though the time for presenting claims has expired, and the property exceeds those claims in amount.

10. In an action of trespass *de bonis asportatis* by an assignee, the measure of damages is the value of the goods taken.

In error to the Hudson Circuit Court.

An action of trespass was brought in the court below, by John J. Brown, assignee of Thomas C. Brown and Henry Demarest, against Jasper Garretson, sheriff, to recover damages of the defendant for taking away and selling certain goods and chattels, which the plaintiff claimed as assignee of said Brown and Demarest.

The defendant justified as sheriff of the county of Hudson, and pleaded that, at the time he took and sold the goods in question, he had in his hands three executions, issued out of said Circuit Court, upon judgments duly entered up against said Thomas C. Brown and Henry Demarest, and that the property in question was, at the time he levied upon and sold it, the proper goods and chattels of said Brown and Demarest, and subject to levies under said executions.

Brown and Demarest had been partners, and had kept a dry goods store in Jersey City. On the 18th of October, 1854, they executed to John J. Brown, the plaintiff below, a deed of assignment, by which they assigned all their property to said J. J. Brown, in trust for their creditors.

The condition of the assignment was as follows: "In trust, nevertheless, for the equal benefit of the creditors of the said parties of the first part, and of each of them respectively, the creditors of the said firm to be first paid out of the said property of said firm owned by said parties of the first part together, and the creditors of each of said parties of the first part to be first paid out of the individual and separate property of said parties, and then the residue of the individual property of such parties to be paid upon the debts of the firm, and not for the individual debts of the other partner; said debts to be paid, in proportion to their respective amounts, out of the net

amount that shall come to the hands of the said John J. Brown for the payment thereof, and for distribution according to the force, form, and effect of an act of the legislature of New Jersey entitled, An act to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors, approved April sixteenth, A. D. 1846, and of any supplement or supplements thereto."

The assignee took possession of the goods on the delivery of the assignment, and entered upon the discharge of his fiduciary duties. On the second and fourth of November, 1854, judgments were entered against said Brown and Demarest in said Circuit Court by confession; executions were issued thereon, and, on the 6th, the sheriff levied upon the stock of goods previously owned by the defendants, but then in the possession of the assignee, and subsequently sold them by virtue of such levy.

The cause was tried at the Hudson Circuit, at January Term, 1856. On the trial, the defendant, by his counsel, admitted the taking and disposing of the goods, but contended that he took them as the property of Brown and Demarest.

The plaintiff offered in evidence, to support his title to the property, the deed of assignment from Brown and Demarest; and whether this assignment was valid, was the real question in the cause.

The assignment was regular upon its face, and was duly acknowledged and recorded. To the assignment was annexed an inventory of the estate of the assignors, and also a list of their creditors, and the amount of their respective claims. The defendant's counsel insisted that these schedules were parts and parcels of the assignment, and that the whole should be construed together. The inventory of the stock of goods closed with a footing of $6685.70, and the debts due the firm, exclusive of what were put down as bad debts, amounted to $4495.48. The debts owing by the firm, according to the list of creditors

annexed to the inventory, amounted to $26,465.92. At the foot of the list of debts due the assignors was the following memorandum: "One note of George Ford, dated September 1st, 1854, at thirteen months, for $400; one, same day and date, for fourteen months, for $300, held by Pharo and Dolson, as collateral security for a debt which is supposed will be satisfied by the sale of a house and lot to them for the satisfaction of $3000 of confidential debt; upon the sale of which house and lot by Brown and Demarest for them, according to privilege of selling the same for said Pharo and Dolson before May 1st, 1856, if said $3000 is netted to said Pharo and Dolson, the said notes are to revert to Brown and Demarest, or the assignee, otherwise any deficiency of said $3000 is to be made up out of said notes." It was contended that this memorandum showed that an illegal preference was created at the time of making the assignment, or in contemplation of making it, and thus, by becoming a component part of the transfer, vitiated the deed.

After the list of creditors of the firm of Brown and Demarest follows an inventory of the individual estate of Thomas C. Brown, amounting to $507, to which is added a memorandum as follows: "subject to a judgment of $536, for which a levy has been made by the sheriff of Hudson upon all the above articles and property. There are no debts owing by Thomas C. Brown, individually, over and above the above-mentioned judgment, on which there is due to John J. Brown, in whose favor such judgment is entered, the sum of $541." It was insisted that this made the assignee a preferred creditor, and that his acceptance of the trust was a recognition, on his part, of a forbidden preference, whereby he became a party to the legal fraud.

During the month previous to the assignment, the assignors had paid a number of confidential debts, principally out of the proceeds of sales and from debts collected. The house and lot conveyed to Pharo and Dolson was the

Garretson v. Brown.

individual property of Demarest. It was insisted that all these payments were made in contemplation of an assignment; that they entered into and became parts and parcels of the assignment, and thereby preferred creditors by the deed itself.

After the evidence was closed, the court charged the jury in substance as follows :

1st. That the deed of assignment executed by Brown and Demarest to the plaintiff was valid on its face, and was not tinctured by the taint of legal fraud, and that at the time of the delivery thereof it conveyed all the estate which it professed to embrace.

2d. That the statement of the judgment of the plaintiff against Thomas C. Brown, as made in the inventory annexed to the deed of assignment, does not, *per se,* impugn the *bona fides* in law of the assignment or conveyance.

3d. That the memorandum at the foot of the list of creditors, that Pharo and Dolson held two notes given by Mr. Ford to the assignors for the payment in gross of the sum of $700, held as collateral security for a debt which they supposed would be satisfied by the sale of a house and lot conveyed to them for the satisfaction of $3000, confidential debt ; the notes to revert to the assignors or assignee if the debt should be realized or satisfied by a re-sale of the house and lot, does not create preferences in favor of any particular creditors, that they are merely items in the inventory of parts of the joint and individual estates of assignors, with statements of anterior liens fastened upon those items, apparently made to give the assignee notice that there might be residiuums from those items, after the antecedent lienors might be satisfied, which should enure to the benefit of parties who might come in under the assignment.

4th. That the instrument of assignment is in form a compliance with the provisions of our statute; and as this exposition of the law clears the assignment from the taint of the legal fraud alleged to be apparent on its face, the

plaintiff is entitled to your verdict for such damages as under the evidence you shall think it just to assess, unless the parol testimony has disclosed facts, intents, and conduct so connected in legal contemplation with the deed of assignment as to avoid it from its contravention of the particular provisions of our statute, or of that policy of the law, or such actual intentional fraud has been found against the assignors as, in your judgment, should vitiate the whole transaction for its wickedness and corruption.

5th. That there is a rule of law, that fraud cannot be inferred, but must be affirmatively proved ; you must therefore look to the defendant for plenary proof of fraud in the particulars upon which he has placed that part of his defence.

6th. That there was no legal fraud in the confession of judgment by Thomas C. Brown to the plaintiff which can be taken advantage of here, admitting that it was a part and parcel of the assignment, nor is the fiduciary integrity of the assignee impaired, in the eye of law or morals, by his taking the trust under such circumstances.

7th. That the two notes which Pharo and Dolson held were given on the same account, and upon the arrangement made with the parties at the time, were to be returned, if the real estate should be sufficient to pay the debt. The fact, that Pharo and Dolson have received payment from Ford of those notes, does not change the nature of the transaction. They hold that money in trust and must account for it with the assignee, if it be not absorbed in discharging the particular indebtedness. The payments, by the assignors, of money to other creditors, between the thirteenth of September and the eighteenth of October, are to be viewed in the same light as is the arrangement with Pharo and Dolson. If the weight of the testimony satisfies you that those transactions were so connected and interwoven with the assignment as to be part and parcel of it, and that such securities and payments would not have been given and made, except in

contemplation of a general assignment of the residue of their estate, and that the plan was resorted to in evasion of the statute, to effect indirectly what the law would not permit to be done by the instrument itself, the assignment was void in its conception and execution, and it conveyed to the assignee no estate in the property, and hence he has failed in that part of his case.

To this charge the defendants excepted, and a bill of exceptions was allowed and sealed.

The defendant, by his counsel, then asked the court to charge the jury as follows:

1st. That the deed made by Henry Demarest and wife to Joseph W. Pharo, bearing date the ninth day of October, 1854, and the transfer of the notes of Ford, amounting to $700, which accompanied the deed, constituted an unlawful preference under the act to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors. Pharo and Dolson, by that deed and the notes, having been preferred over other creditors to the amount of three thousand dollars, such preference having been sanctioned by John J. Brown previous to the time that the same was consummated, and being recognized in the assignment, the assignment thereby became void as against the creditors having levies under executions.

2d. That, if the jury believe that the judgment confessed by Thomas C. Brown to John J. Brown, on the 25th day of September, 1854, for the sum of $541; the payment to Erasmus Randall, on the fourteenth day of October, of $640.37; the payment to Hiram Gilbert, on the seventeenth day of October, of $1200; the security given to Pharo and Dolson, to the amount of $3000; the payment made to Bonnel, Brown, Hall & Company, on the second day of October, of the sum of $283; and the payment of $247.83, between the thirteenth day of September and the eighteenth day of October, 1854, were made with a view to, or in contemplation of a subsequent

assignment, they constituted such preferences as rendered the assignment of the eighteenth of October void as against creditors having levies under executions.

3d. That, if the jury believe that the partners, Brown & Demarest, paid their private debts in full out of the partnership property at a time when the partnership was insolvent, and such payments were made in contemplation of an assignment, such payments were a fraud upon the act entitled "An act to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors," and rendered the assignment of the 18th of October void as against creditors having executions.

4th. That, if the jury believe that Brown and Demarest, after the thirteenth of September, 1854, concealed the amount of their assets, with a view of making a compromise at forty cents or thirty-five cents on the dollar, and in case they failed to make a compromise, contemplated an assignment, such concealment was a fraud, which would vitiate the assignment as against creditors having executions and levies on the property assigned.

5th. That, if the jury, from the evidence, believe that Brown and Demarest did not make a full surrender of all their property to the assignee at the time of making the assignment, the assignment is fraudulent and void as against creditors having executions, whether the assignee was a party to the fraud or not.

6th. That the time for presenting claims by the creditors under this assignment having passed, the plaintiff cannot recover the full value of the goods, but only such sum as would be sufficient to pay the demands of creditors who have come in under the assignment and the reasonable expenses of the assignee.

7th. That, if the jury believe that the motive of making the assignment was to enable the debtors to obtain time to compromise their debts, the assignment then, as a

matter of law, was made to delay and hinder creditors, and is fraudulent and void.

8th. That if the jury believe that Thomas C. Brown remained in possession of the property after the assignment, it is evidence of such fraud in the assignment as will vitiate it.

9th. That there is evidence that the deed to Pharo, the passing of the notes to Pharo and Dolson, the confession of judgment to the assignee, and other dispositions of property proved, were parts of one system, for the purpose of making a general assignment; and if the jury so believe, and that preferences were intended to be made by the above acts, the assignment is void.

10th. That there is some evidence to show that the assignment is fraudulent and void, and the weight of the evidence and credibility of the testimony is for the jury to determine.

11th. That the assignee is not a *bona fide* purchaser for a valuable consideration, under the language of the statute of frauds.

The judge refused to charge as above requested; to which the defendant, by his counsel, excepted, and prayed a bill of exceptions, which was allowed and sealed. The jury rendered a verdict for the plaintiff for $6902.31, for which amount judgment was entered.

A writ of error was brought removing the cause into this court, and errors were assigned on the bill of exceptions.

Argued at June Term, 1857, before the CHIEF JUSTICE, and Justices ELMER, POTTS, and VREDENBURGH.

*I. W. Scudder* and *W. L. Dayton* for the plaintiff in error.

*Zabriskie* and *Bradley*, for the defendant.

POTTS, J. The plaintiff below, John J. Brown, assignee of Brown and Demarest, obtained a judgment in the Hudson Circuit against Jasper Garretson, who was the sheriff of Hudson, for the sum of $6902.31, in an action of trespass.

The alleged trespass was the taking and carrying away of certain goods and chattels, which the plaintiff, John J. Brown, claimed title to under and by virtue of an assignment made and executed to him by Brown and Demarest, for the benefit of their creditors.

The sheriff justified the taking by virtue of sundry executions in his hands against said Brown and Demarest, upon judgments subsequent to the assignment.

The principal question in the cause was as to *the validity of the assignment;* the plaintiff's title to the goods, and consequently his right of action depending upon this, and the defendant insisting it was fraudulent and void as against creditors.

The first section of the "act to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors" (*Nix. Dig.* 27), provides that "every conveyance or assignment made by a debtor or debtors, of his, her, or their estates, real or personal, or both, in trust to the assignee or assignees, for the creditor of such debtor or debtors, *shall be made for their equal benefit,* in proportion to their several demands, to the net amount that shall come to the hands of said assignee or assignees for distribution ; and *all preferences of one creditor over the other,* or whereby any one or more shall be first paid, or have a greater proportion in respect of his, her, or their claim, than another, shall be deemed fraudulent and void, excepting *mortgage and judgment creditors,* when the *judgment* has not been by *confession for the purpose of preferring creditors."*

The deed of assignment of Brown and Demarest is dated the 18th of October, 1854. It purports to be for the equal benefit of all their creditors. It embraces not only

the property held by them as a firm, but also the individual property of each of them. It is assigned in trust for the equal benefit of both their partnership and individual creditors; directs that the creditors of the firm be first paid out of the property of the firm, and the creditors of each of said parties to be first paid out of the individual and separate property of said parties; and then the residue of the individual property of said parties to be paid upon the debts of the firm, and not for the individual debts of the other partner; and that the debts be paid, in proportion to their respective amounts, out of the net amount that shall come to the hands of the assignee, &c., according to the form of the statute, &c.

The assignment, therefore, appears to be unexceptionable upon its face; it is made in accordance with the provisions of the statute, covers in terms all the property of the assignors, is for the equal benefit of all their creditors, and directs distribution among them according to the well-settled principles of law in such cases.

But it is contended that this assignment is fraudulent and void on several grounds, to wit: 1. That the said Thomas C. Brown, previous to the assignment, confessed a judgment to John J. Brown, the assignee. 2. That Demarest had, previous to the said assignment, conveyed a house and lot to one Pharo, to secure a debt due Pharo and Dolson from the firm. 3. That the assignors had, shortly before the assignment, disposed of a large portion of their assets, and applied the proceeds to the payment of certain favored creditors; and that all these acts were done in contemplation of the assignment, with full knowledge, by the assignors, of their insolvency, and with the view to prefer certain of their creditors.

Assuming that the defendant below established all these facts upon the trial, are they sufficient to render the deed of assignment void in law? The act does not say so. The first section of the act says the assignment shall be for the equal benefit of the creditors; and if it is not so, if it

is made for the distribution of the assignor's property unequally among the creditors, that will render it inoperative and void under the statute. *Varnum* v. *Camp*, 1 *Green* 326. The same section of the act declares that all preferences of one creditor over another, &c., shall be fraudulent and void ; that is, as I apprehend, preferences made in and by the assignment. But whether it be so or not, is immaterial to the question here. It is, at all events, clear that it is only the preferences that are declared void, and not the assignment, unless they are incorporated in the instrument itself, in which case it is not such an assignment as the law permits.

I do not understand the court, in the case of Varnum *v.* Camp, to hold that preferences made in contemplation of an assignment will avoid the deed. What the court says is, that to make a valid assignment under the statute, it is necessary—1. "That it," the assignment, "should be for the equal benefit of the creditors, for the statute directs that it shall be so made." 2. "That it," the assignment, "creates no preferences, for all preferences are declared fraudulent and void ; and consequently the instrument whereby they are attempted must be of the like character." In answer to the argument that a preference given in and by the assignment did not make void the instrument, but only the preference, the court said, "An assignment made in a manner prohibited and forbidden must be invalid. The express denial of preferences, is in truth but an amplification of the antecedent clause of the statute, and without really adding anything to its extent, or perhaps its force, serves to express in distinct terms the legal effect and operation of that prior clause." And "it follows, then, that where an assignment, not made for the equal benefit of the creditors, but whereby," that is by the assignment, "a preference is sought to be given to any one, not a creditor by mortgage or judgment, over another, it (the assignment) is in contemplation of law fraudulent and void." This was the case of a preference given in

Garretson v. Brown.

the assignment itself. The other question, as to what would be the effect of preferences made before the a-signment, and not incorporated in the instrument, but made in view of the assignment, was not before the court at all.

A careful examination of the statute must, I think, result in the following conclusions :

1. That if the deed of assignment contains upon its face a preference or preferences of one creditor over another, except as hereafter mentioned, the deed itself is void and inoperative, as being in contravention of the statute; and the preferences of course fall with the deed.

2. That the phraseology "and all preferences of one creditor over the other," &c., found in the first section of the statute, means all preferences made in and by the deed of assignment. It was not intended to abridge or take away the common law right of every man, even when in failing circumstances, to dispose of his property, provided he does it honestly, or to pay one honest creditor in preference to another. In this respect the statute has no analogy to the English bankrupt acts. But the statute does intend that if a failing debtor seeks its benefit, his assignment must conform to its provisions ; and any attempt to elude them, it declares, shall be deemed fraudulent, and shall vitiate the instrument itself. 4 *Griff. Reg.* 1235. Until the debtor divests himself of the title to his property by assignment, his dominion over it is perfect, and he may use it for any honest and lawful purpose. The object to be gained by an assignment under the act, is to get the benefit of the release which it provides. But while it is purely voluntary on the debtor's part, it is also optional with the creditors to come in or not ; if they do come in and take a dividend, they release all claim against the debtor for any balance. But if they do not choose to come in, if they are dissatisfied with the conduct of the debtor in any way, they may refuse to accept of the benefits offered them, and all their rights and remedies remain

unimpaired.    And even if they come in and take a divi-
dend, they may avoid the effect of the release, if they can
subsequently show that the debtor has been guilty of
fraud.    The debtor, it is true, will have stripped . himself
of his property.    The assignment, as to that, will operate
as a preference of such creditors as do come in ; but it is to
be remembered that if the debtor had not chosen to make
an assignment, he might still have paid his last dollar to
favored creditors, and no exception could have been taken
to it.

3. An assignment is not void because it gives a preference
to mortgage creditors, or to judgment creditors, when the
judgment has not been by confession for the purpose of pre-
ferring creditors.    But the statute was not to be evaded by
the artifice of confessing a judgment with a view to an
assignment, and giving it a preference in the deed.    The
inference, from the language of the act, is not that a *judg-
ment* confessed for the purpose of preferring a creditor is to
be deemed fraudulent and void, but that the *preference* of
such a judgment in the deed shall be deemed a fraud, and
shall avoid the deed.

It may be marked, in this connection, that when an
assignment is once made, it operates to convey all the as-
signor's property, real and personal, whether embraced
in the inventory attached to the deed or not.    *Section* 2.
The provision of the statute that the debtor shall make
and annex an inventory to the assignment, is directory
merely; and no errors or omissions or statements in the
inventory will affect the deed.    They are in no way bind-
ing or conclusive.    If the debtor has fraudulently conveyed
away any part of his property, the assignee may sue for
and recover it for the use of the creditors who present
their claims.    *Section* 13.    And any fraudulent conduct of
the assignor, touching the disposition of his property with
reference to the assignment, will enable the creditors who
come in under the assignment to avoid the operation of
the release.    *Section* 14.    And by the provisions of the

9th section, the creditors who come in under the assignment have the means to compel the assignee to do his duty by citation and attachment.

The argument of the defendant's counsel, that all preferences made by an insolvent debtor anterior to his assignment, but with a view to, or in contemplation of such assignment, are intended to be declared fraudulent and void by the statute, cannot be sound.

At common law, the right to prefer creditors is undoubted. If the statute meant to abridge so important a right, it would have said so in plain terms. It says, indeed, that "all preferences," &c., shall be deemed fraudulent and void; but the words are referable, it seems to me, to the subject matter of which the statute was speaking, to wit, conveyances or assignments by debtors to trustees for creditors, and therefore may be properly construed as meaning only all preferences made in and by such assignments. This appears to have been Ch. Just. Ewing's reading of the section in Varnum v. Camp, and of Ch. Just. Hornblower's, in *Vanderveer* v. *Conover*, 1 *Harr.* 490, as it was of Mr. Griffith in the *Register*, above cited, if I understand him rightly.

Should we not get afloat on a sea of difficulty by adopting the defendant's construction? What is to be understood by the phraseology, " in view," or " in contemplation," of an assignment? Suppose it can be proved, or the debtor admits that he contemplated making an assignment six months before he did it, are all his transactions for those six months to be ripped up? Are all the creditors who have been honestly paid or arranged with to be prosecuted, and the amounts they received to be recovered back, although they had known nothing of the debtor's insolvency or of his ultimate designs, and dealt with him honestly and fairly? Clearly all such settlements and dealings, if honest and *bona fide*, were lawful when they were made. Did the statute intend that the debtor should have the power, at any time afterwards, to annul,

and make them all constructively fraudulent and void, by the single act of carrying into effect a purpose contemplated before, but concealed from them, of making an assignment?

The debtor confesses a judgment for the purpose of preferring an honest creditor over other creditors, a thing done every day in fact. If the judgment was confessed for an honest debt, it is good and valid in law. But it was confessed for the purpose of preferring the creditor. Can the debtor make it constructively fraudulent and void by subsequently executing an assignment?

The doctrine, it appears to me, would violate the clearest principles of common justice, and open a door for litigation, which was never contemplated by the framers of the law. The statute, as I understand it, makes the *preference* of such a judgment in the deed fraudulent and void, and not the *judgment* itself. It refers to preferences made in the assignment, and not to such as are made by the debtor antecedent to it, though he contemplated an assignment at the time. It did not mean to leave the validity of these transactions to depend upon the arbitrary will of the debtor, who, up to the moment of executing the deed, was at perfect liberty to complete the act he previously contemplated, or not.

The question, whether any of the transactions of the debtors, antecedent to their assignment, are liable to be avoided upon the doctrine of the statute of frauds, is not now before us. Recently, in the case of *Owen* v. *Arvis, ante p.* 22, the court went over the general subject, and it is unnecessary to advert to it here.

Then, if this construction of the statute is correct, it disposes of all that class of exceptions, on the part of the defendant, which relates to the question of the validity of the assignment. That instrument is not affected by any of the acts complained of. If there was a fraudulent confession of judgment, or a fraudulent conveyance of property, such judgment or conveyance is liable to be avoided

by the assignee; and if he has neglected his duty, it is in the power of the creditors to compel him to its performance; and so of *any* disposition the debtor may have made of his property. If fraudulent the remedy is in the hands of the assignee, and he is but the trustee for the creditors, who can compel him to perform his duty. But the *deed* is good, nevertheless, and vested all the debtor's estate in the assignee. If the acts complained of amounted to nothing more than the payment or satisfaction of honest claims of actual creditors, they neither affect the assignment nor are they fraudulent in themselves.

And so it is unimportant, in this view of the case, whether the exceptions taken by the defendant's counsel to the rulings of the court below, in the rejection or admission of evidence, were correct or not. For no part of the evidence excepted to and admitted, or offered and rejected, was material to the issue, which was, whether the legal title to the property taken by the defendant was in the assignee at the time. Nor was it material how many creditors had presented their claims to the assignee, for the title to the property did not depend on that; nor whether the inventory annexed to the assignment was correct or not, for the inventory was no part of the deed, and the assignee was not bound by it, either as to the property assigned or the rights of the creditors.

A number of errors are assigned upon what the court charged, and what it declined to charge. But I find no error in these which can be made the foundation for a reversal.

The court charged the jury, in effect, that the value of the property taken by the defendant was the true measure of damages. This is assigned for error. The defendant's counsel insist that the plaintiff, if entitled to recover at all, could only recover sufficient to pay the creditors who had presented their claims within the time limited by the statute. But this involves the proposition that the trust terminates immediately on the expiration of the time

limited for the presentation of claims, as to so much of the trust property as is not required for their payment. The proposition cannot be conceded. The legal title to all the property of the debtor, and its proceeds, remains in the trustee, where the deed has vested it, until, by some proper judicial proceeding, it is disposed of. It cannot be seized and taken as the property of the assignor while the legal title to it is not in him.

Upon the whole, the judgment should, in my opinion, be affirmed.

The CHIEF JUSTICE and VREDENBURGH, J., concurred.

ELMER, J. I concur in affirming the judgment. It was held in the case of *Varnum* v. *Camp*, 1 *Green* 326, that an assignment which on its face prefers a creditor is prohibited by our statute, and is therefore invalid. Adopting, also, the opinion of the Supreme Court of Massachusetts, in the case of *Perry* v. *Holden*, 22 *Pick.* 269, that a mortgage and a deed of assignment may be so connected as to be considered one act, and therefore within the prohibition of the statute and void, I am of opinion that this case is not of that character. In the cases of *Fairbanks* v. *Haynes*, 23 *Pick.* 323; *Housatonic Bank* v. *Martin*, 1 *Metc.* 294; *Rundlett* v. *Dole*, 10 *N. Hamp.* 458; and *Bates* v. *Coe*, 10 *Conn.* 280, it was held that prior mortgages given to secure preferences did not render a subsequent assignment void.

But I am not prepared to concur with the intimation of the Chief Justice in Varnum *v.* Camp, which seems to be adopted by my brethren now, "that the express denial of preferences, is in truth but an amplification of the antecedent clause of the statute, and without really adding anything to its extent, or perhaps to its force, serves to express in distinct terms the legal effect and operation of the prior clause." It is an important rule of construction, that every part of a statute shall have due effect. In my

judgment, the first clause of the first section requires every assignment to be made for the equal benefit of creditors, and thereby prohibits one which undertakes to provide for preferences. But the next clause goes further. Its language is, "and all preferences of one creditor over the other, or whereby any one or more shall be first paid, or have a greater proportion, in respect of his, her, or their claim, than another, shall be deemed fraudulent and void, excepting mortgage and judgment creditors, when the judgment has not been by confession for the purpose of preferring creditors." Certainly these words are broad enough to include any preference not provided for in the assignment itself, but made in contemplation of such an act. The exception in favor of mortgage and judgment creditors, by a necessary implication, saves the lien thereby created in the case of a mortgage expressly given to secure a preference, prohibiting only a judgment confessed for that object, and, as it seems to me, shows that the preferences prohibited include such as are not referred to in the assignment itself. Mortgages, for whatever purpose given, are left to stand unaffected by the act, while judgments confessed for the purpose of preferring creditors entitled to claim under the assignment are prohibited. To give effect to this exception, the assignment must stand, and the preference only is destroyed. The other construction rejects the phrase, "when the judgment has not been confessed for the purpose of preferring creditors." The reference is to a judgment confessed for the purpose of preferring creditors provided for in an assignment, which to be valid must provide for all. If such a judgment is preferred in the assignment itself, that is void, and the judgment will stand unaffected. But if the assignment is good, the judgment confessed to procure a preference must be avoided, or otherwise such a judgment is left in the same situation as a mortgage, contrary to the plain language and intent of the statute. What was said on this question in Varnum v. Camp, and repeated in

*Vanderveer* v. *Conover*, 1 *Harr.* 490, was only by way of argument, the point not being involved in either of those cases.

Under what circumstances and by what course of proceeding preferences created by a debtor about to make an assignment may be avoided, it is not necessary now to settle, that question not being before us. I cannot doubt that such preferences, are voidable upon general principles, as well as by the plain terms of the statute, and I see no difficulty in applying the rule of the English courts in cases of bankruptcy, that such preferences are invalid as have been given voluntarily, without pressure from the creditor, and with the view of giving a fraudulent preference, in contemplation of an assignment. *Burrill on Asst.* 100, *and cases in note.*

CITED *in Fairchild* v. *Hunt*, 1 *McCar.* 371; *National Bank of the Metropolis* v. *Sprague*, 5 *C. E. Gr.* 28